JOHN A. PATIN, Judge Pro Tem.
On or about January 9, 1989, at approximately 8:30 a.m., appellant, Priscilla Ravia was standing between a car and a disabled truck, which she was attempting to jump start, on the shoulder of Highway 27, South of Sulphur, Louisiana. The appellee, John Istre pulled onto the shoulder to avoid striking another vehicle (which had allegedly swerved to avoid striking a stray dog), striking the rear of the disabled truck. The disabled truck moved forward, pinning Ravia between it and the car Ravia was using to jump start. Ravia survived the accident, but she sustained serious injuries, resulting in the loss of one of her legs and the rendering useless of the other.
In February of 1989, Istre’s insurer, Government Employees Insurance Company, sent a draft with an attached release, to Ravia’s attorney, Johnny Ernest Brown. The draft, bearing Government’s name and dated 2/14/89, identified claimant as P.A. RAVIA, listed the accident date, 01/09/89, and was in the amount of $10,000.00. It was made out to, “ATTORNEY JOHNNY E. BROWN, P. A. RAVIA, DAVID RA-VIA, INDIVIDUALLY & AS HUSBAND *813 & WIFE & HOLSTON’S AMBULANCE SERVICE”, and recited “IN PAYMENT OF ANY & ALL CLAIMS VERNA J. IS-TRE”. The release was not executed, but the draft was endorsed and cashed by Ra-via and the other payees.
On July 19,1989, Ravia filed suit against Istre and Government, among others, seeking damages. Istre and Government filed a peremptory exception of res judicata, alleging that Ravia’s negotiation of the $10,000 draft amounted to a “transaction, compromise and release” of all claims asserted in Ravia’s lawsuit against them. The trial court sustained the exception of res judicata and Ravia appealed to this court. On appeal, Ravia argues that because she allegedly had no intention of compromising her claim against Istre, the trial court erred in holding that she did so by accepting and cashing the $10,000 draft.
The relevant law applicable to this case begins with La.Civ.Code art. 3071, which defines transaction or compromise as:
... an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding....
La.Civ.Code art. 3078 dictates that: Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
La.Civ.Code art. 3079 provides:
A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence.
The record discloses that an accident involving Ravia and Istre occurred. Ravia was injured in the accident, and Government would have been responsible for payment of damages if its insured, Istre, were found at fault. To “prevent a lawsuit” Government proposed that Ravia and Istre “adjust their differences” by Government paying and Ravia accepting $10,000. In February of 1989 Government sent Ravia’s attorney a draft with an attached release. Although the release was never executed, Ravia did endorse and negotiate the draft. The draft dated “2/14/89” clearly identified itself as being from “GOVERNMENT EMPLOYEES INSURA(nce) COMPANY”, identified “P.A. RAVIA” as claimant, “01/09/89” as the accident date and was in the amount of “$10,000.00”, “IN PAYMENT OF ANY & ALL CLAIMS VERNA J. ISTRE”.
In our decision, Doga v. Southern Farm Bureau Insurance Company, 511 So.2d 78 (La.App. 3d Cir.1987), we held that:
A draft may serve as a written compromise where it recites that it is in full payment for all claims as a result of an accident and the draft is endorsed and negotiated. Citing Audubon Insurance Company v. Farr, 453 So.2d 232 (La.1984).
Furthermore, we held that:
Whether a draft has been tendered and accepted as full payment is a question of fact.
The trial court sustained Istre’s and Government’s pleas of res judicata. In finding that Ravia’s endorsement and negotiation of Government’s draft resulted in the transaction or compromise of the claims for damages, the trial court found that Government’s draft was tendered and accepted as full payment.
Ravia urges this court to upset the trial court’s judgment based upon the non-execution of the release which accompanied the draft and her testimony that even after consulting with her attorney, she believed that negotiation of the draft would not compromise any claims she had against Istre. Ravia argues that she had no intention of releasing Istre and thus her endorsement and cashing of Government’s draft could not have released Istre.
*814 It is true that La.Civ.Code art. 3073 provides:
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.
Thus, a party’s intention in compromising is relevant to the scope of the compromise. However, the above article qualifies this rule with the statement “unless it be the necessary consequence of what is expressed”. In this case the draft Ravia endorsed and cashed was “IN PAYMENT OF ANY & ALL CLAIMS VERNA J. ISTRE”. A necessary consequence of this expression was that Ravia’s cashing of the draft would compromise her claim against Istre. Furthermore, Ravia made this argument to the trial court, at length and to no avail. The trial court heard the witnesses and weighed the evidence, concluding that Ravia’s endorsement and negotiation of the draft more likely evidenced her intent to compromise her claim against Istre, as opposed to the explanation she offered. We note the Louisiana Supreme Court’s holding in Rosell v. Esco, 549 So.2d 840 (La.1989):
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
Ravia makes much of her allegedly neither being shown nor being aware of the release which accompanied Government’s draft. The Louisiana Supreme Court addressed a similar argument in Audubon, supra. The court’s response to the argument is equally applicable here:
Despite the absence of a specific release, there is no question that an accord and satisfaction took place between Paul and Allstate when she negotiated Allstate’s draft. There was a disputed claim, a tender of a certain amount in settlement of that claim and an acceptance.
Also, see our opinion in Doga, supra: Although plaintiff did not sign and return the settlement release form attached to the draft, this omission does not necessarily amount to a manifestation of his lack of intent to settle his personal injury claim.
The numerous cases cited by Ravia do not provide authority for a reversal in the case sub judice. The facts in those opinions disclose that either the party alleged to have compromised was of “limited mental capacity”, the notation on the draft involved was far less clear or there were some other particular facts which the respective courts found decisive and which do not exist here.
For the foregoing reasons, we affirm the decision of the trial court granting the peremptory exception of res judicata. Costs of this appeal will be paid by appellant.
AFFIRMED.